UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:08-CV-10-H

GEORGE E. ROUBAL                                                                                        PLAINTIFF

V.

THE PRUDENTIAL INSURANCE                                                                      DEFENDANT
COMPANY OF AMERICA

**MEMORANDUM OPINION AND ORDER**

George Roubal ("Plaintiff"), claims that the Prudential Insurance Company of America ("Prudential") wrongfully terminated his disability benefits under his employer's insurance plan (the "Plan") in violation of the Employment Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. §§ 1001 *et seq.* Plaintiff has moved for judgment in his favor and Prudential has opposed it. The Court has reviewed the complete administrative record, has considered the arguments of the parties, both in their opposing briefs and during an extensive oral argument. For the reasons that follow, the Court concludes that Prudential's review of certain aspects of this record was so one-sided and arbitrary that it fails to meet the most lenient standard of review in ERISA cases.

I.

Plaintiff worked as a manager of analytical services at Brown Foreman Corporation from 1985 through December 1999. On March 30, 1999, he suffered injuries in an automobile accident. Roubal was flown to University of Louisville hospital, where he remained for the next 13 days. He returned to work part time at the end of April 1999. On December 10, 1999, Plaintiff passed out at work and stayed in a hospital over night. In February 2000, Plaintiff

underwent laparoscopic surgery and had his gallbladder removed. After the surgery, Prudential provided long-term disability benefits for a closed period beginning on June 8, 2000 and ending on December 31, 2000, based on Plaintiff's surgery and depression. Plaintiff challenges Prudential's termination of these benefits. Essentially, Plaintiff claims that Prudential should not have terminated his benefits in December 2000, but rather it should have continued providing benefits.

In appealing the denial of benefits, Plaintiff produced documents from several medical providers detailing his condition. These documents included the medical records from University of Louisville hospital, assessments of Plaintiff's cognitive functioning by Dr. Brian Monsma and Dr. Sheldon Levinson, and various other records. Prudential employed Dr. Scott Millis, Dr. Charles Syrjamaki, Dr. Stephen Gerson, and Dr. Valerie Ito to conduct file reviews of Plaintiff's medical records.

Plaintiff claims he suffered disabling injuries in his March 30, 1999 automobile accident. Specifically, Plaintiff claims he is disabled because he suffers from cognitive deficiencies and has certain physical limitations. These cognitive deficiencies include loss of memory and diminished processing abilities. His physical impairments consist of chronic pain in several parts of his body, including one of his hands and one of his feet. This pain makes it hard for him to stand or walk for extended periods of time and hard for him to lift heavy objects. In addition to seeking disability benefits under the Plan, Plaintiff applied to the Social Security Administration for disability benefits. The Social Security Administration deemed him fully disabled as of December 31, 2000.

II.

The Court reviews an ERISA plan administrator's decision under an arbitrary and capricious standard where the plan grants the administrator discretion in the decision making process. *Wendy's Int'l, Inc., v. Karsko*, 94 F.3d 1010, 1012 (6th Cir. 1996) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)). Here the Plan granted the administrator discretion to determine benefits, when it said that disability exists when "Prudential determines" that the conditions of disability have been met. *See Noland v. Prudential Ins. Co. of America*, 187 Fed.Appx. 447, 452 (6th Cir. 2006) (applying the arbitrary and capricious standard on the same language as found in the Plan). Thus the Court will review Defendant's denial of benefits under the arbitrary and capricious standard.

This standard is the most deferential form of judicial review. *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 710 (6th Cir. 2002). A court will uphold an administrator's decision where "it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Baker v. United Mine Workers of Am. Health and Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). However, when certain red flags are present a court should take these into account when reviewing an administrator's decision. These facts do not alter the standard of review, but must be taken into consideration when determining if the administrator's decision was arbitrary and capricious. *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292 (6th Cir. 2005). In short, these factors are not dispositive, but courts should look closely at cases involving these conditions. The Sixth Circuit has identified at least three red flags found in this case that courts should consider when applying the arbitrary and capricious standard. These include: 1) a conflict of interest due to the fact that the insurer both makes the disability determination and

pays out the benefit; 2) a determination of total disability by the Social Security Administration; and 3) a plan administrator's reliance on a file review of the insured's medical records. *Id.* at 292-95. With the applicable standard and the red flags present in mind, the Court will now analyze whether Prudential arbitrarily denied benefits to Plaintiff.

### III.

The Plan authorizes Prudential to conduct a file review of pertinent medical records to determine whether Plaintiff qualifies for benefits. ERISA, on the other hand, authorizes a benefits determination based on this review only when the review constitutes a principled and fair examination of those records. *Id.* at 295. In the instant case, Prudential had four doctors review Plaintiff's medical records.

Plaintiff's claims related to certain physical disabilities are easily resolved. After examining the medical records, however, Prudential denied any grant of benefits based on physical disability. Those medical records did indicate, and several of the reviewing doctors noted, that Plaintiff would have certain limitations based on his physical condition. However, given Plaintiff's job as an analyst in a lab, Prudential was not arbitrary in denying a grant of benefits in this circumstance, where a fair review of the records indicated some physical limitations, but nothing that would preclude Plaintiff from performing his job.

The real issue here concerns Plaintiff's neurological disabilities, which everyone agrees comprise the most serious of his complaints.

### A.

Plaintiff complains of a loss of memory, inefficient cognitive processing, and other mental impairments as a result of injuries sustained in the accident. Unlike the physical

4

impairments, Plaintiff's treating physicians and Prudential's reviewing doctors strongly disagree on the extent to which Plaintiff's mental functioning is impaired and whether this affects his ability to work.

One of Plaintiff's doctors, Brian Monsma, Ph.D., diagnosed Roubal with an anoxic brain injury, as a result of his accident.[1] In reaching his conclusion, Dr. Monsma conducted a wide variety of psychological tests. He then scored these tests and reported his findings and conclusions based on his interactions with Plaintiff. In this report, Dr. Monsma stated that Plaintiff appeared to be giving sufficient effort to the tests and did not appear to be exaggerating his cognitive deficiencies. Dr. Monsma also gave Plaintiff a test called the Test of Memory Malingering ("TOMM") to determine whether Roubal was putting forth the necessary effort. Those results suggested that Plaintiff gave appropriate effort and was not exaggerating his deficits. After reviewing the test data, Dr. Monsma found that if Plaintiff could work at all, it could only be in a low distraction and low demand environment. He went on to say that given the time between the accident and Plaintiff's current condition these neuropsychological deficits would likely be permanent.

Likewise, Sheldon Levinson, Ph.D. examined Plaintiff and his findings supported those of Dr. Monsma. Like Dr. Monsma, Dr. Levinson administered a wide battery of tests to Plaintiff in order to diagnose him. His results were consistent with Dr. Monsma's findings. He found that Plaintiff suffered from memory deficits. Perhaps more interesting though, Dr. Levinson's office, Edelson and Associates, conducted a review of Plaintiff before the 1999 accident. In fact, Plaintiff was involved in another automobile accident in December 1997, and just two months

---

[1] An anoxic brain injury results from a lack of oxygen to the brain.

5

later, he was seen by someone in Edelson and Associates. As a result of the '97 accident, Plaintiff suffered a decline in reasoning, problem solving, verbal memory, attention, and concentration. However, at the time, Plaintiff's prognosis was good, and in fact, Plaintiff's cognitive abilities did make some recovery. Thus after the '99 accident, Dr. Levinson could compare Plaintiff's test results following the '97 accident with his test results following the '99 accident. In comparing the two, he found a drop in memory ability between the two tests. Dr. Levinson found that this was good evidence that Plaintiff suffered increased brain damage as a result of the second accident.

B.

Prudential employed a number of persons to review Plaintiff's medical records, but none of them interviewed or examined him directly. Though a direct interview or examination is not required, the absence of one places certain obligations of fairness upon the reviewer.

Dr. Valerie Ito conducted a review of Plaintiff's records and concluded that his physical injuries warranted some restrictions, but nothing that would prevent him from doing his job. Specifically, she found that he might have trouble standing or walking for extended periods of time. Furthermore, Dr. Ito concluded that the medical evidence did not support a diagnosis of a hypoxic injury. Another one of Prudential's reviewers, Dr. Charles Syrjamaki, came to similar conclusions. He also proscribed certain limitations based on Plaintiff's physical injuries, including a prohibition on lifting heavy objects. However, he too concluded that despite Plaintiff's complaints of pain and discomfort from his physical injuries, he is not disabled. Furthermore, Dr. Syrjamaki also did not find evidence of a hypoxic injury.

While Dr. Ito and Dr. Syrjamaki focused mostly on Plaintiff's physical condition,

6

Prudential engaged two reviewing doctors to look primarily at his claimed cognitive impairments, Scott Millis, Ph.D. and Dr. Stephen Gerson. Dr. Gerson, a psychiatrist, examined Plaintiff's records and found no disability that would impair him from performing the duties of his job. Moreover, Dr. Gerson found that Plaintiff did not qualify as disabled at any point in time. This is in stark contrast to Prudential's own determination that Plaintiff was disabled for a closed period between June and December of 2000. Of course, Prudential could have incorrectly determined that Plaintiff qualified as disabled in 2000 or his condition might have changed. But, Dr. Gerson seems to be the only person who believes that Plaintiff was not disabled during this time period. This conclusion casts some doubt on his conclusion that Plaintiff is not currently disabled.

     Finally, Prudential relies heavily on the report of Dr. Millis. In reviewing the records, Dr. Millis noted the fact that they did not include the raw data from the tests conducted by Dr. Monsma and Dr. Levinson. Without this data, Dr. Millis stated he could not determine whether the other doctors had correctly scored and reported the test results. Upon request, Dr. Levinson provided the information, but Dr. Monsma could not find the raw scores. Without the raw data, Dr. Millis concluded that the results found in Dr. Monsma's report were not reliable. Dr. Levinson on the other hand did provide the raw data to support his scoring of the tests. Dr. Millis made no statement the Court could find about the authenticity of the test scoring. Dr. Millis does, however, note that Dr. Levinson did not use any internal validity measure to gauge Plaintiff's effort in taking the tests.[2] For this reason, Dr. Millis concluded that there was no valid and reliable evidence to support Dr. Levinson's conclusion that Plaintiff suffers from

---

[2]Dr. Millis also objects to Dr. Monsma's use of the TOMM as a validity measure, claiming that the TOMM alone is not a sufficient test of the patient's effort.

cognitive disorders.

Thus, the doctors disagree about whether Plaintiff suffered disabling injuries. Prudential could freely accept its doctor's opinions over the opinions of Plaintiff's doctors, but only if the opinions arrived at by the Prudential doctors constituted a fair opinion based on the record. In examining the record it is not clear that Prudential's doctors gave such a fair review.

C.

Plaintiff's doctors found that he suffered at least one hypotensive event.[3] However, Prudential's reviewing doctors found that Plaintiff never suffered from hypotension. The oddity here is not that the two disagree, but that the two disagree based on the same medical documentation. Specifically, both sides of doctors point to clear statements contained in the University of Louisville Hospital medical records. Plaintiff's doctors point to a line in the records that clearly states, "he had one hypotensive episode." However, Prudential's reviewing doctors point to a line in the records that just as clearly states, "he was never hypotensive." The U of L records present contradictory evidence. Without giving any reason why they chose one statement over the other, Prudential's reviewing doctors simply rely on the statement that Plaintiff was never hypotensive and used this as evidence that he suffered no brain injury. It is not a fair review to choose one contradictory statement out of many to represent an entire medical report. A rational explanation of such a choice might correct this deficiency, but one would never know from the one-sided review conducted here.

Similarly, Dr. Millis' findings can be summarized as objections to Plaintiff's position. First, Dr. Millis objects that Plaintiff does not have the data from all of the tests. Second, he

---

[3]Hypotension is a decrease in blood pressure.

objects that the testers may not have taken into account Plaintiff's attention deficit disorder or effort when scoring the tests. Finally, he objects to the diagnosis by Plaintiff's doctors of a hypoxic brain injury. All of these objections essentially attack the reliability or credibility of Plaintiff and his doctors. A reviewing doctor, who never meets the patient, however, is not in a good position to determine a patient's credibility. *Calvert*, 409 F.3d 296-97. Likewise, an attack on a treating physician's reliability or credibility in regards to a diagnosis, is unfounded where the reviewing doctor has not at least talked to the treating physician and the patient. After all, the diagnosing doctor relied on his understanding of the patient's credibility. Allowing an attack on a treating physician's diagnosis, when it is based in part on his determination of the patient's credibility, is tantamount to allowing a reviewing doctor to weigh in on that patient's credibility, something a reviewing doctor cannot do. *Id.*

Here, Dr. Monsma and Dr. Levinson both relied upon their determination that the Plaintiff did not exaggerate his symptoms and put forth the appropriate effort. Prudential's reviewing doctors improperly discounted the findings of Plaintiff's doctors based on a credibility determination that the reviewing doctors were not in a position to make.[4] In improperly discounting the findings of Plaintiff's doctors, Prudential arbitrarily denied benefits to Plaintiff.

IV.

Even though the Court has determined that Prudential arbitrarily denied Plaintiff's disability claims, Prudential raises another issue for consideration. The Plan contains a two-year limitation for disability claims "caused at least in part" by alcoholism, drug abuse or a "mental,

---

[4] This does not mean Prudential must accept the findings of Plaintiff's treating doctors. On the contrary, the Supreme Court has clearly said there ERISA contains no treating physician's rule. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). However, plan administrators may not arbitrarily refuse to credit the opinions of a treating physician. *Id.*

psychoneurotic or personality disorder." This limitation includes an exception that provides coverage if the disabled person is confined in a hospital. Plaintiff is not confined in a hospital. Thus, if his cognitive disorders fall within the mental health exception of the Plan, he is eligible only for a two-year period of benefits.

As stated above, the mental health limitation only applies to disabilities, caused at least in part by mental health conditions. While Plaintiff has complained of depression and some of his doctors have diagnosed him as suffering from depression, this is not what renders Plaintiff disabled. Plaintiff's disability stems from his cognitive disorders, which make it difficult for him to concentrate and affect his memory. Thus, Prudential cannot rely upon Plaintiff's depression as grounds for applying the two-year limitation.

The more relevant issue is whether Plaintiff's cognitive disorders, those disorders that do render him disabled, meet the mental health limitation. The parties and the Court have found little in the way of case law on this subject. The Sixth Circuit has previously said that given the arbitrary and capricious standard of review, courts should uphold a plan administrator's determination that an insured suffers from a mental disorder where there is a rational explanation for this opinion. *Parker v. Metropolitan Life Ins. Co.*, 99 F.3d 181, 185 (6th Cir. 1996), *vacated on other grounds*, 121 F.3d 1006 (6th Cir. 1997). The court in *Parker* said that if the standard of review were *de novo*, instead of arbitrary and capricious, then perhaps there would be an issue of fact as to whether the changes in the plaintiff's brain gave rise to a physical or mental disorder. *Id.* Like *Parker*, the Court is confronted with an arbitrary and capricious standard of review, and Prudential has provided a rationale for why Plaintiff's injury should be classified as a mental disorder. The Court finds that Prudential did not act arbitrarily in denying benefits beyond the

two-year period.

In making each of the legal findings contained in this Memorandum Opinion, the Court concludes that an appropriate order is sufficient to effect the necessary remedy and that a remand is unnecessary.

IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is SUSTAINED in part and DENIED in part. Plaintiff is eligible for two year's worth of disability benefits based on his cognitive disorders.

This is a final and appealable order.

cc: Counsel of Record