UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:08-CV-10-H

GEORGE E. ROUBAL                                                                         PLAINTIFF

V.

THE PRUDENTIAL INSURANCE                                        DEFENDANT
COMPANY OF AMERICA

**MEMORANDUM OPINION**

George Roubal ("Plaintiff") filed suit against the Prudential Insurance Company of America ("Defendant") claiming wrongful termination of his disability benefits under his employer's insurance plan (the "Plan") in violation of the Employee Retirement Income Security Act ("ERISA"). *See* 29 U.S.C. §§ 1001 *et seq.* Defendant denied Plaintiff's benefits, concluding that Plaintiff was not disabled. The Court entered judgment against Defendant finding that Plaintiff was entitled to two year's worth of disability benefits based on his cognitive disorders.

Plaintiff now makes two motions: one for attorney's fees, costs, and prejudgment interest and another to amend the Court's judgment to provide disability benefits beyond the two-year limitation. The latter request involves delicate decisions about the proper procedure for re-evaluating ERISA claims in the first instance after an appeal. The Court ultimately concludes that because the matter cannot be resolved as a matter of law, the plan administrator should make the initial review on remand.

I.

ERISA permits the Court to award reasonable attorney's fees and costs to either party. 29 U.S.C. § 1132(g)(1). The Court considers five factors in determining an award of fees:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Sec. of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985) [hereinafter *King*]. "No single factor is determinative," but the Court must consider each before exercising its discretion. *Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 529 (6th Cir. 2008) (quoting *Moon v. Unum Provident Corp.*, 461 F.3d 639, 642-43 (6th Cir. 2006)). The Court is not precluded from finding "culpability or bad faith based only on the evidence that supported [the Court's] arbitrary-and-capricious determination." *Id.* at 530.[1]

In finding that Defendant's decision was arbitrary and capricious, the Court noted that Defendant only had outside doctors do a file review of Plaintiff's medical records and never interviewed or examined him directly. The Court explained that Defendant's doctors' determinations often starkly contrasted those of Plaintiff's treating doctors. In particular, several doctors and Defendant agreed that Plaintiff was disabled for a period of time in 2000. Yet, one of Defendant's reviewing doctors for long-term disability concluded that Plaintiff had never been disabled. The discrepancies in the conclusions led the Court to find that Defendant had not fairly reviewed Plaintiff's case. Given Defendant's arbitrary and capricious determination, based on

---

[1] Defendant argues that culpability or bad faith only justifies fees where the incorrect benefit decision was not factually or legally debatable. It relies on the Sixth Circuit's opinion in *Foltice v. Guardsman Products, Inc.*, 98 F.3d 933 (6th Cir. 1996). The Sixth Circuit affirmed the district court's denial of fees. *Id.* at 939. Defendant relies on the district court's statements that the denial of Foltice's "benefits 'was erroneous, even arbitrary, but did not evidence a degree of culpability approaching bad faith,'" to argue that finding that the administrator made an arbitrary and capricious decision does not warrant the granting of fees. *Id.* at 937. Defendant misses the mark, however, since the Sixth Circuit goes on to state that it does not believe the administrator's decision was arbitrary. *Id. Folstice* does not stand for the proposition that Defendant's act must be worse than arbitrary and capricious in order to warrant a fee award.

contradictory evidence, the Court concludes that Defendant did not have a good faith basis for its denial of benefits.  Culpability weighs in favor of awarding attorney fees.

Second, the ability to satisfy the award is not an important factor, as it serves more of an exclusionary rather than inclusionary function.  *Fujitsu Ten Corp. of Am. Employee Benefit Plan-Ind. Employees v. Unicare Life & Health Ins. Co.*, 2008 WL 2478357, at *7 (E.D. Mich. 2008) (citing *Gribble v. CIGNA Healthplan of Tenn., Inc.*, 1994 WL 514529 at *4 (6th Cir. 1994)).  No one disputes, however, that Defendant, as a major insurance company, has the ability to pay reasonable fees.

Third, the deterrence factor considers the deterrent effect a fee award would have on other plan administrators.  *Gaeth*, 538 F.3d at 531.  In judging such an effect, the Court considers whether Defendant's actions and the facts of the case are so unique that they may serve no deterrence value, or whether other insurance companies may face similar circumstances.  *Id.* at 531-32.  The Sixth Circuit has previously found that the erroneous interpretation of certain terms in a pension plan does not warrant fees for deterrent effect.  *Id.* (citing *Foltice*, 98 F.3d at 938).  Where the administrator makes "a decision to terminate benefits without any supporting medical evidence," however, a deterrence measure is appropriate.  *Id.*

Defendant did consider the medical evidence in Plaintiff's file.  Yet its doctors' determinations based on that evidence contradicted Defendant's previous determinations.  Furthermore, Defendant's doctors improperly made credibility determinations about Plaintiff without ever speaking with Plaintiff in person.  Although Defendant did not completely disregard the medical evidence, it did not properly consider the medical evidence.  To make a determination of Plaintiff's credibility without ever contacting him exemplifies improper

consideration. This is conduct which should be deterred by whatever means at the Court's disposal.

Fourth, fees are appropriate where Plaintiff sought to confer a common benefit on all participants to an ERISA plan or to resolve significant ERISA legal questions. *King*, 775 F.2d at 669. Plaintiff only sought to overturn Defendant's denial of his personal benefits. The only benefit to others derives from the deterrent effect this litigation may have on Defendant's arbitrary decisions. Further, no significant ERISA legal question existed in this case. The arbitrary and capricious standard has been analyzed repeatedly. *Gaeth*, 538 F.3d at 533. The common benefit factor does not weigh in favor of awarding fees; however, it is not determinative.

Fifth, the Court considers whether Defendant's position was unreasonable or lacking in merit. *Moon*, 461 F.3d at 645. Extremely close cases weigh against attorney's fees. *Id.* The Court did not find Defendant's previous arguments to present a close case. It stated that the "record was so one-sided and arbitrary that it fails to meet the most lenient standard of review in ERISA cases." Mem. Op. at 1. The Court found Defendant's arguments regarding its denial of Plaintiff's benefits to be without merit. This weighs in favor of awarding fees.

Since all factors except the common benefit factor weigh in favor of awarding fees, the Court will award appropriate costs and fees. Plaintiff provided the Court with a detailed accounting of time spent on this case. Further, the requested hourly rate is in line with rates in the community for lawyers with "reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984). Plaintiff only asks for the cost of the filing fee. The Court will enter an award of these reasonable costs and fees.

II.

Prejudgment interest is awarded with a judgment to compensate Plaintiff fully for the loss suffered at an earlier time and not compensated until the future. *E.E.O.C. v. Ky. State Police Dept.*, 80 F.3d 1086, 1097-98 (6th Cir. 1996) (quoting *Partington v. Broyhill Furniture Indus. Inc.*, 999 F.2d 269, 274 (7th Cir. 1993)). Prejudgment interest is not intended to be punitive. *Id.* The award is premised on "benefits wrongly withheld." *Wells v. U.S. Steel & Carnegie Pension Fund*, 76 F.3d 731, 737 (6th Cir. 1996). Plaintiff has now waited eight years to receive his wrongly denied benefits. Although he waited one and a half years to appeal the termination of benefits, Plaintiff filed within the statute of limitations. The Court will not hold Plaintiff's delay in filing against him. Accordingly, the Court will award proper prejudgment interest.

Defendant makes no suggestion on the proper calculation of interest. Plaintiff suggests using the post-judgment interest rate. That rate represents a reasonable amount of interest. *See McMurtry v. Paul Revere Life Ins. Co.*, 67 Fed. Appx. 290, 292 (6th Cir. 2003) (affirming the district court's use of the federal statutory post-judgment rate to determine the prejudgment interest rate). The Court will calculate the prejudgment interest using the federal statutory rate.

III.

Plaintiff also moved for the Court to alter or amend its judgment. Such a motion may be granted if there is (1) a clear error of law, (2) newly discovered evidence, (3) an intervening change in controlling law, or (4) to prevent manifest injustice." *CenCorp, Inc. v. Am. Intern. Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (internal citations omitted). Plaintiff invokes only clear error of law and a need to prevent manifest injustice as grounds for reconsideration, arguing that the Court erred by applying the 24 month mental health limitation and by using the

arbitrary and capricious standard of review. To assess this motion, the Court must resolve a few preliminary issues.

A.

First, Plaintiff argues that the Court erred in applying the 24 month mental health limitation because Defendant waived it by not raising it in the denial notice. A claim denial must set forth the specific reason or reasons for denial and refer to the specific plan provisions on which the denial is based. 29 C.F.R. § 2560.503-1(g)(1). Defendant never asserted in its denial letters that Plaintiff's condition would give rise to a two-year limitation. The denial, however, was based on a finding of no disability. Defendant has no reason to notify Plaintiff of a limitation on benefits that the Defendant denies Plaintiff has any right to. The Court will not conclude that Defendant waived the mental health limitation by not asserting it in a letter that denied Plaintiff any benefits whatsoever. The opposite rule would illogically require administrator's to list every possible basis for denial or limitation in the alternative in a claims letter. Such a standard would surely prove unworkable.[2]

Second, the Court reviews an ERISA plan administrator's decision under an arbitrary and capricious standard of review where the plan grants the administrator discretion in the decision making process. *Wendy's Int'l, Inc. v. Karsko*, 94 F.3d 1010, 1013 (6th Cir. 1996) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)). The Court previously concluded that the Plan granted the administrator the discretion to determine benefits. Mem. Op. at 3. Under that standard, the Court will uphold the administrator's decision where "it is the

---

[2] The Court recognizes that the First Circuit has disagreed and concluded that the failure to raise a rationale for the denial of benefits prior to litigation may serve as waiver of that rationale. *See Bard v. Boston Shipping Ass'n*, 471 F.3d 229, 244 (1st Cir. 2006); *Glista v. Unum Life Ins. Co. of Am.*, 378 F.3d 113, 128 (1st Cir. 2004).

-6-

result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991).

Applying the arbitrary and capricious review, this Court determined that the administrator had not erred in denying benefits beyond the 24 month mental health limitation. The administrator, however, never concluded that the mental health limitation applied. The administrator issued only a blanket denial of benefits based on Plaintiff's ability to work. Thus, the Court could not have reviewed the administrator's explicit application of the mental health limitation. That limitation became relevant only in the course of the subsequent litigation.

The Southern District of Ohio has concluded, relying on Sixth Circuit reasoning, that "courts should not defer to *post hoc* rationale and the laws for denying benefit claims generated for purposes of litigation by plan administrators when those rationales did not appear in the denial letters or in the administrative record." *Nichols v. Unum Life Ins. Co. of Am.*, 2005 WL 1669338 at *7 (S.D. Ohio 2005) (citing *Univ. Hospitals of Cleveland v. Emerson Elec. Co.*, 2002 F.3d 839 at n.7 (6th Cir. 2000) (stating that the Court cannot consider evidence that is not part of the administrative record). This Court agrees with this approach. Upon reconsideration, therefore, this Court now concludes that it should not have given deference to the lawyer's arguments in applying the mental health limitation where the administrator had not considered the issue.

The Court previously concluded, however, that Plaintiff was in fact disabled. Further, that "disability stems from his cognitive disorders, which make it difficult for him to concentrate and affect his memory." Mem. Op. at 10. The Court made clear that Plaintiff's depression was not the basis of his disability. *Id.* In so finding, the Court classified Plaintiff's disability as a

cognitive disability not a mental health disorder.

B.

The only remaining question is whether the mental health limitation applies to cognitive disorders such as Plaintiff's. Since the administrator did not make even an inquiry on the subject, the Court has no capacity to review it using arbitrary and capricious analysis. However, the Court can determine whether, as a matter of law, the Plan's mental health limitation provision applies to Plaintiff's purely cognitive disorder.

The Plan specifically limits benefits for mental illnesses to a twenty-four month period. Admin. R. 40. Provision D of the Plan states that the benefit limitation "applies if your Total Disability, as determined by Prudential, is caused at least in part by one or more of the following: (1) A mental, psychoneurotic or personality disorder, (2) Alcoholism, (3) Drug Abuse." If the total disability is so caused, "benefits are not payable for your Total Disability for more than 24 months." Provision D (the "Mental Health Limitation") goes on to provide an exception to the limitation, thereby extending coverage beyond 24 months, where the claimant is confined to a Hospital receiving treatment for the mental, psychoneurotic or personality disorder, alcoholism, or drug abuse. The Plan does not define the terms "mental," "psychoneurotic," or "personality disorder." All benefits under the plan are limited by the Maximum Benefit Duration, which is spelled out in the Schedule attached to the Plan. The Maximum Benefit Duration is a sliding scale based on the claimant's age at the time the disability incurred. *Id.* at 70.

Ambiguities in plan language, which is language susceptible to two reasonable interpretations, are to be construed against the drafter of that language. *Perez v. Aetna Life Ins.*

*Co.*, 150 F.3d 550, 557 n. 7 (6th Cir. 1998). Plan provisions are interpreted "according to their plain meaning, in an ordinary and popular sense." *Id.* at 556 (citing *Regents of the Univ. of Mich. v. Agency Rent-A-Car*, 122 F.3d 336, 339 (6th Cir. 1997)). The Court should give effect to the Plan's unambiguous terms. *Id.* (citing *Lake v. Metro. Life Ins. Co.*, 73 F.3d 1372, 1379 (6th Cir. 1996)). Courts do not rewrite contracts by adding additional terms. *Id.* at 557.

Ideally, the Court could determine as a matter of law whether the limitation applies to Plaintiff's cognitive disability under the existing record. The Plan's language is of little aid to the Court. The provision itself provides no definitions or illustration that may illuminate the provision's meaning. "Mental illness" is reasonably interpreted to encompass many varieties of cognitive and emotional disorders. The term on its face does little to indicate how the underlying cause may affect the definition.

No Sixth Circuit opinion directly addresses the scope of application of such a limitation. Cases addressing the scope of vague mental illness limitations in other circuits generally fall into two camps. The Fifth and Eight Circuits apply a "symptom" analysis to the disability. *See Lynd v. Reliance Stand. Life. Ins. Co.*, 94 F.3d 979 (5th Cir. 1996) (holding that the limitation applies to mental health symptoms that serve as the basis of the disability, regardless of the cause of the symptoms); *Brewer v. Lincoln Nat'l Life Ins. Co.*, 921 F.2d 150, 154 (8th Cir. 1990) (holding the same). The Ninth Circuit applies a "cause or symptom" analysis to the disability. *See Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 943 (9th Cir. 1995) (holding that the limitation does not apply if either a cause or symptom of the disability is physical).

Although the general approaches of each camp seem contradictory, in fact the

"symptom" camp is not clearly at odds with the "cause or symptom" camp. The Fifth and Eighth Circuit case law is founded upon the interpretive principle that ERISA requires plan provisions to be interpreted according to a layperson's understanding. *Brewer*, 921 F.2d at 154. Those Circuits conclude that lay people classify illnesses by their manifestations, not the causes. *Id.* Those cases, however, address factual situations devoid of a traumatic physical injury to the brain. *See generally Id.* (the plaintiff had an affective mood disorder that may have a genetic or biological cause); *Lynd*, 94 F.3d 979 (the plaintiff had major depressive disorder, which can have a physiological basis).

Here, Plaintiff may have sustained a physical trauma to the brain that resulted in diminished cognitive functioning. The Court believes the two camps could coalesce around this one point. The best interpretation in a factual situation where cognitive dysfunction results from a physical brain trauma is that the mental health limitation does not apply. The cases that take another view are not necessarily contrary. Those cases all dealt with mental illnesses not the result of any trauma. Cognitive disorders resulting from physical injury to the brain are exempt from the mental health limitation.

C.

Even though the evidence suggests that a physical trauma to the brain may have caused diminished cognitive function, no fact finder has thoroughly reviewed the evidence to make such a determination. In this procedural context, remand to the plan administrator is appropriate to make such a review. *Helfman v. GE Group Life Assur. Co.*, 2009 WL 2191516 at *11 (6th Cir. 2009) (quoting *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 171 (6th Cir.2007)) (internal quotations omitted); *Whitescarver v. Sabin Robbins Paper Co.*, 313 Fed. Appx. 781, 786 (6th

Cir. 2008); *Houston v. Unum Life Ins. Co. of Am.*, 246 Fed. Appx. 293, 302 (6th Cir. 2007); *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 461 (6th Cir. 2003). The plan administrator is best situated to assess the medical evidence to determine the cause of Plaintiff's psychological issues. Based on that finding, the plan administrator must determine the appropriate duration of benefits.

In view of the Court's findings about the fairness of the plan administrator's previous evaluations, there is some cause for concern whether it can be trusted to perform this task properly. Notwithstanding this concern, the Court is convinced that the administrator is the proper person to make this factual determination in the first instance. As before, the appellate procedures provide a means for correcting any unfairness.

The Court will issue an order consistent with this Memorandum Opinion.

August 13, 2009

**John G. Heyburn II, Judge**
**United States District Court**

cc: Counsel of Record